Opinion by
 

 Dithkich, J.,
 

 This case and the case of
 
 Commonwealth v. John Romito and Arthur Ventura
 
 at No. 107 April Term, 1949, wherein Arthur Ventura was the appellant, were argued together. One of the errors here complained of is that the court erred in its charge as to the testimony of an accomplice. Counsel refer to their brief at No. 107 April Term, 1949, in support of their position. The court said, in part: “Defense counsel has referred to the fact that this co-defendant John Romito is an accomplice. By his own admission he is an accomplice. He says that he, along with Wells and Ventura, the defendant, are the three men who burglarized the Keystone Bakery on the early morning of June 2nd, 1946; so that he is—and we say to you as a matter of law, and within the meaning of the law, he is an accomplice. An accomplice is one who has any criminal connection with the matter on trial, although he is not a co-defendant. Now when you come to measure the credibility of this John Romito, the principal witness for the Commonwealth, you will bear in mind that where the case rests upon the testimony of an accomplice, it is always best for the jury to receive the testimony of the accomplice with caution. If you believe the testimony of the accomplice, if you are satisfied of the absolute truthfulness of the testimony of the accomplice, you may convict upon that testimony without any other. However, it is usually best to have the testimony of the accomplice corroborated in material facts, or some material parts that indicate its truthfulness; because . . . such testimony comes from a corrupted source. It is not essential that the entire testimony of the ac
 
 *164
 
 complice be corroborated; but if it be corroborated in material facts to such an extent as to satisfy you of part of its truthfulness, then you can convict; or, you can convict if it is not corroborated if you believe the testimony to be the absolute truth. However, I say that the usual rule is to receive an accomplice’s testimony with caution. There is no common law which forbids conviction upon the uncorroborated testimony of an accomplice if his evidence satisfies the jury of the guilt of the accused beyond a reasonable doubt. A jury may believe an uncorroborated accomplice; and if his testimony produces in your minds a conviction of the defendant’s guilt beyond a reasonable doubt, you may convict. If the testimony of the accomplice, his manner of testifying, his appearance upon the witness-stand, impress the Jury with the truth of his statements, there is no inflexible rule of law which prevents conviction.
 

 “It is a matter of general knowledge that partners in crime will lie when apprehended, to cast the chief blame on each other. In this case there is no such attempt made by Eomito. He says, H take my blame for my share in that crime’. It is also equally well known that partners in crime sometimes do tell the truth as to the commission of a crime. The administration of justice in criminal cases would be seriously handicapped if there were any rule that the testimony of an accomplice could not be received, or that it alone would not be sufficient to justify a conviction. ... if we didn’t have the rule oE law as we have just given it to you, ... it would be impossible many times to get a conviction for the reason that in many cases you have only the testimony of an accomplice to go to the jury.”
 

 We find no error in the charge in this respect. See opinion filed this day in
 
 Commonwealth of Pennsylvania v. Romito et al.,
 
 166 Pa. Superior Ct. 158, 70 A. 2d 444.
 

 
 *165
 
 But we find prejudicial and therefore reversible error in another part of the court’s charge.
 

 Ventura was asked on cross-examination: “Q. Were you Involved in the burglary of the Keystone Bakery on that date, with John Romito? A. Would you please repeat that again.
 
 Mr. Brennan:
 
 Read the question. (Last above question read by the Stenographer.) A. (No audible answer.) Q. Were you involved—do you know what I mean? A. Yes, sir. Q. Were you with him on that burglary? A. No, sir. Q. Were you ever on any burglary—- A. No, sir. Q. —of the Keystone Bakery? A. No, sir, I was never involved; I never had anything to do with John Romito in any burglaries.”
 

 The jury returned its verdict December 17,1948, and the following order of court was subsequently entered: “Now, to-wit: February 25, 1949, it is hereby ordered and directed that the remarks of the Court to the Jury following the return of the Verdict ... in the above entitled case, be transcribed by the Official Stenographer and appended to so as to become and be a part of, the official record of the trial of said case; and as so supplemented the transcript is hereby approved and ordered filed.”
 

 The remarks of the court which it ordered made part of the record were as follows: “Members of the Jury, so that you may not feel any compunction of conscience about that verdict, we want you to know some things about this case that were not permitted to be brought out by the District Attorney:
 

 “This same Arthur Ventura, against whom a record was produced, at No. 37 January Sessions, 1936, in the Courts of Allegheny County, wherein he entered a plea of guilty to the charge of breaking and entering the store of M. C. Thoma, with intent to commit a felony; on the same day entered a plea of guilty to being a con
 
 *166
 
 federate with Samuel Pulaski, at No. 25 January Sessions, 1936, for entering the building of Harry Strauchler for the purpose of committing a felony therein; . . .” The court then referred to 23 other indictments to which Ventura had either entered a plea of guilty' or nolo contendere, and continued: “Now the reason these were not offered by the District Attorney to further impress you with the lack of credibility on the part of this defendant Arthur Ventura, is that in all of these cases the Court up there suspended sentence and allowed the sentence which was imposed at No. 37 January Sessions, 1936, to stand. In each of these other ones, of which the records are right here, the Court referred to the sentence imposed in the one case, and suspended all of the other sentences, because they had already imposed that sentence—so that you need have no fear, you needn’t lie awake at night and wonder whether you made a mistake in this case. We think the Jury’s verdict is eminently proper; and we just want you to know that— . .
 

 The order continued: “The Court further hereby certifies that at the point on page 146 [166a], beginning third line, where the following appears: ‘Q. Were you involved in the burglary of the Keystone Bakery on that date, with John Romito? A. Would you please repeat that again.
 
 Mr. Brennan:
 
 Bead the question. (Last above question read by the Stenographer.) A. (No audible answer.)’ the trial Judge, who was sitting immediately to the right of the witness, and within a distance of two feet from him, heard the witness, the Defendant, say, U was never on that burglary nor any other burglary in my life’, and that the notes taken by the Court in longhand so indicate. BY THE COURT, Robert E. McCreary, P. J.”
 

 As we read the printed record, appearing on pages 166a and 167a, the witness started to answer the question “Were you ever on any burglary—” before his
 
 *167
 
 counsel had completed it. The complete sentence was “Were you ever on any burglary of the Keystone Bakery?” and the answer to the question was “No, sir.” In its opinion refusing defendant’s motion for a new trial the learned trial judge, however, quotes only the first half of the question, to wit, “Q. Were you ever on any burglary— A. No, sir.” and then continues: “Of course, these questions and answers open the door to the action taken by the District Attorney of showing the previous criminal record of the defendant. Unfortunately, the Court Stenographer missed the answer of the defendant which was made as certified by the Court at page 245 of the record. At the point where the Court Stenographer indicates ‘no audible answer’ the defendant on the witness stand actually said, as certified by the Court at page 245 of the record, ‘I was never on that burglary nor any other burglary in my life.’ ” We do not see how the jury could possibly have been influenced by an answer that was not audible to the court stenographer or to counsel, but to the trial judge alone. Certainly the jury, which was separated from the witness by a greater distance, is not at all likely to have heard it. “Even without that answer in the stenographic notes of the Court Stenographer we are satisfied that the defendant put his character or reputation in evidence when, in answer to the question ‘Were you ever on any burglary’, he answered ‘No, sir’.” As we have endeavored to point out, the complete question was “Were you ever on any burglary—of the Keystone Bakery?”
 

 The court charged the jury that: “The only reason that record of conviction was permitted to be heard by . . . [them] was so that you may consider that in determining the credibility of the defendant; and it was offered only for the purpose of affecting his credibility. You will notice that the record of this conviction, as it has been given to you, shows that he entered a plea of
 
 *168
 
 guilty sometime in January, 1936; and on tlie stand here he was asked whether as a result of the conviction in that case he was not sentenced to the Allegheny County Workhouse for a period of not less than three nor more than ten years; . . . and the record itself shows that he Avas committed to the Allegheny County Workhouse for a period of not less than three years and not more than ten years. The defendant has testified on direct examination, and on cross examination, that in the year 1936 (the year in Avhich he Avas sentenced to the Allegheny County Workhouse for a period of not less than three nor more than ten years) he started Avorking for the Equitable Gas Company, and worked for the Equitable Gas Company from 1936 to 1945. He also says, in his testimony, that he was married to his wife on July 2nd, 1938; which Avould be tivo and a half years after the date he was committed to the Allegheny County Workhouse for a period of not less than three nor more than ten years. These things are matters for your consideration in determining the question of the credibility of the Avitness Arthur Ventura.”
 

 The record, certified by John J. McLean, Clerk of Courts of Allegheny County, shows that on October 6, 1936, the defendant was paroled for the balance of the maximum sentence. While the learned trial judge Avas careful to charge the jury that the only reason they Avere permitted to consider the record Avas to enable them to determine the
 
 credibility
 
 of the defendant, there Avas Avithheld from them the fact that the defendant had been paroled at the time he said he went to work for the Equitable Gas Company and later when he married. When the court said to the jury that the defendant testified that “he started working for the Equitable Gas Company . . . [and] was married to his Avife . . . after the date he Avas committed to the Allegheny County Workhouse,” the jury could come to no other conclu
 
 *169
 
 sion, in tlie absence of any knowledge on tbeir part that he was on parole subsequent to October 6, 1936, than that he was deliberately lying. If any part of the record at No. 37 January Sessions, 1936, in the Court of Oyer and Terminer of Allegheny County, was admissible, it was all admissible. It was prejudicial error to withhold from the jury that part of the record which was favorable to the defendant.
 

 Judgment of sentence reversed and a venire facias de novo awarded.